UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCOTTS VALLEY BAND OF POMO INDIANS, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 19-1544 (ABJ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | ) ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION & ORDER**

On May 24, 2019, plaintiff, the Scotts Valley Band of Pomo Indians ("Scotts Valley") filed a complaint against the United States Department of the Interior ("DOI"); David L. Bernhardt, in his official capacity as Secretary of the Department; Tara Sweeney, in her official capacity as Assistant Secretary for Indian Affairs; and John Tahsuda, in his official capacity as Principal Deputy to the Assistant for Indian Affairs. Compl. [Dkt. # 1]. The case stems from Scotts Valley's efforts to establish a casino on a parcel of land in California, and the Department's response to its request for an Indian Land Opinion ("ILO") confirming the eligibility of the land for that purpose in accordance with the applicable statute and regulations.

The Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*., governs the conduct of gaming on "Indian lands," and although it prohibits gaming "on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988," *id.* § 2719(a), it includes certain exceptions. The exception at issue in this case is for "restored lands," that is, lands "taken into trust as part of . . . the restoration of lands for an Indian tribe that is restored to Federal

recognition." *Id.* § 2719(b)(1)(B)(iii).  Scotts Valley submitted a request for an ILO that a 128-acre parcel in the City of Vallejo, California qualified for the restored lands exception.  Compl. at 2.  The agency determined that some of the criteria were met – including that Scotts Valley is a restored Tribe within the meaning of the IGRA and the regulations – but it found that the Tribe failed to demonstrate the requisite "significant historical connections" to the land.  *See* Compl. ¶¶ 33–37.

Scotts Valley alleges that the agency's decision was arbitrary, capricious, and otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  *See generally* Compl.  It seeks a declaration that the decision rendered by the Secretary exceeded his statutory authority, and that it contravened Departmental regulations.  Compl. at 15–16.  The complaint calls for injunctive relief including that the Court remand its request for an Indian Land Opinion to the agency for reconsideration.  Compl. at 15–16.

After the case was filed, the Yocha Dehe Wintun Nation ("Yocha Dehe") moved to intervene.  Yocha Dehe's Mot. to Intervene [Dkt. # 17] ("Yocha Dehe's Mot."); Mem. of P. & A. in Supp. of Yocha Dehe's Mot. [Dkt. # 17-1] ("Yocha Dehe's Mem.").  It argues that the land at issue was the exclusive territory of its ancestors, the Patwin people, and that if Scotts Valley is permitted to develop the parcel, including by establishing a casino there, Yocha Dehe's existing nearby gaming facility will suffer "severe injury," thereby harming the important tribal programs and cultural resources that depend upon casino revenue.  *See* Yocha Dehe's Mem. at 2, 6.  Because it is questionable whether the would-be intervenor has satisfied the injury-in-fact and causation elements necessary for standing, and, even if it has standing, it has not shown that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," *see* Federal Rule Civil Procedure 24(a), the motion will be denied.

## BACKGROUND

As with most cases involving claims to tribal lands, the documented histories of both the Scotts Valley and Yocha Dehe Tribes date back to the 1800s. While a fuller review of those histories may be relevant to future decisions in this case, this opinion will include only those facts relevant to the pending motion to intervene.

Congress enacted the IGRA in 1988 for the purpose of "provid[ing] a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments," among other goals. 25 U.S.C. § 2702(1). Section 2719(a) of the IGRA prohibits gaming "on lands acquired by the Secretary [of the DOI] in trust for the benefit of an Indian Tribe after October 17, 1988, unless – (1) such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988[.]" 25 U.S.C. § 2719(a)(1). Section 2719(b)(1)(B) sets out several exceptions to that rule, though, including a provision that subsection (a) will not apply when: "lands are taken into trust as part of – (iii) the restoration of lands for an Indian tribe that is restored to Federal recognition." *Id*. § 2719(b)(1)(B)(iii).

In 2008, the DOI, through the Bureau of Indian Affairs ("BIA"), promulgated regulations to clarify the procedures it would use to determine whether the exceptions contained in subsection (b) of the IGRA would apply. *See* 25 C.F.R. § 292.12 (2020). Section 292.12 describes the criteria a tribe "must meet" to "establish connections to newly acquired lands for purposes of the 'restored lands' exception":

> (a) The newly acquired lands must be located within the State or States where the tribe is now located, as evidenced by the tribe's governmental presence and tribal population, and the tribe must demonstrate one or more of the following modern connections to the land:

>> (1) The land is within reasonable commuting distance of the tribe's existing reservation;
>>
>> (2) If the tribe has no reservation, the land is near where a significant number of tribal members reside;
>>
>> (3) The land is within a 25-mile radius of the tribe's headquarters or other tribal governmental facilities that have existed at that location for at least 2 years at the time of the application for land-into-trust; or
>>
>> (4) Other factors demonstrate the tribe's current connection to the land.
>
> (b) The tribe must demonstrate a significant historical connection to the land.
>
> (c) The tribe must demonstrate a temporal connection between the date of the acquisition of the land and the date of the tribe's restoration. To demonstrate this connection, the tribe must be able to show that either:
>
>> (1) The land is included in the tribe's first request for newly acquired lands since the tribe was restored to Federal recognition; or
>>
>> (2) The tribe submitted an application to take the land into trust within 25 years after the tribe was restored to Federal recognition and the tribe is not gaming on other lands.

*Id*. § 292.12.

Plaintiff alleges that the federal trust relationship with the Scotts Valley tribe was terminated in 1958, and that since then, the tribe has been landless. Compl. ¶¶ 13, 15. The United States reinstated it as a federally recognized tribe effective September 5, 1991, Compl. ¶ 14, and the parties do not dispute that plaintiff is an Indian tribe that was "restored to Federal recognition" for purposes of the IGRA.

On January 29, 2016, plaintiff submitted a request for an Indian Lands Opinion to the DOI, seeking a finding that a parcel of land in Vallejo County it sought to develop qualified for the restored lands exception to the IGRA. Compl. ¶ 27. On August 11, 2016, it filed an application

with BIA to place the land into trust for the Tribe and stated that Scotts Valley intended to use the land to develop a homeland and a casino resort complex.  Compl. ¶ 29.  On February 7, 2019, DOI responded to the request for an ILO and informed the tribe that the parcel did not qualify as restored lands under the IGRA.  Compl. ¶ 33.  As alleged in the complaint, the "February letter reached its negative conclusion based solely on the historical connection requirement."  Compl. ¶ 37.  The agency found the Tribe to be a "restored Tribe" within the meaning of the IGRA and the regulations; it concluded that "there is a 'modern connection' between the parcel and the Tribe within the meaning of the IGRA and the regulations . . . .;" and it concluded that "there is a 'temporal connection' between the parcel and the Tribe's restoration under the IGRA and the regulations."  Compl. ¶¶ 34–36.  But while it "acknowledged that there is evidence of an historical connection between the Tribe and the Parcel," it "concluded that the evidence is insufficient to constitute 'significant historical connections.'"  Compl. ¶ 37, quoting 25 C.F.R. § 292.12(b).  Scotts Valley petitioned for reconsideration, which was denied in April 2019.  Compl. ¶¶ 39–40.

Scotts Valley filed its complaint on May 24, 2019 seeking the Court's review of the DOI's decision under the APA.  It points to a number of substantive and procedural deficiencies in the decision making, and it asks that the ILO request be remanded to DOI for reconsideration.  *See generally* Compl.  Among other things, plaintiff seeks a declaration that agency lacked the authority under the statute to enact the regulation calling for proof of a significant historical connection in order to qualify as "restored lands," and it asks that the agency be enjoined from imposing that requirement in the future, including when reconsidering plaintiff's ILO request. Scotts Valley.  *See* Prayer for Relief, Compl. at 15–16.  Defendants filed an answer on August 5, 2019, [Dkt. # 14], and the Court established a summary judgment briefing schedule.  *See* Min. Order (Aug. 20, 2019).

On September 10, 2019, Yocha Dehe filed its motion to intervene as a defendant. Scotts Valley opposed the motion, *see* Mem. of P. & A. in Opp. to Yocha Dehe's Mot. [Dkt. # 18] ("Scotts Valley's Opp."), and the matter is fully briefed.[1]

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that an outside party can intervene in an existing lawsuit under certain circumstances. Federal Rule of Civil Procedure 24(a) requires a court to permit "intervention of right" upon the filing of a timely motion by anyone who has a statutory unconditional right to intervene, or who

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Alternatively, a court may, in its discretion, permit intervention where a movant files a timely motion and "is given a conditional right to intervene by a federal statute," or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

Before considering a motion to intervene, a court must first ascertain whether the would-be party has demonstrated Article III standing. *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). This showing must be made even when the party is seeking to intervene as a defendant. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).

---

1   *See also* Yocha Dehe Wintun Nations Reply in Supp. of Mot. to Intervene [Dkt. # 19] ("Yocha Dehe's Reply").

## ANALYSIS

**I.    The Court is not persuaded that Yocha Dehe has standing to intervene.**

Standing is a necessary predicate to any exercise of federal jurisdiction; if it is lacking, then the dispute is not a proper case or controversy under Article III, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). To establish constitutional standing, a plaintiff must show that (1) it has suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000).

To allege the first element, injury in fact, a plaintiff must demonstrate that it "suffered an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), quoting *Lujan*, 504 U.S. at 560. To be "concrete," the injury "must actually exist," meaning that it is real, and not abstract, although concreteness is "not . . . necessarily synonymous with 'tangible.'" *Id.* at 1548–49, citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (intangible injuries such as those to free speech and free exercise of religion may nevertheless be concrete). And to be "particularized," the injury must affect a plaintiff "in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548, quoting *Lujan*, 504 U.S. at 560 n.1.

Of importance to this case, the injury must be "actual," or it must be "imminent" – that is, the "threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). According to the D.C. Circuit, the Supreme Court has "also noted that in some cases it has 'found standing based on a substantial risk that the harm

will occur.'"  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 626 (D.C. Cir. 2017), quoting *Clapper*, 568 U.S. at 414 n.5.

Where, as here, a party seeks to intervene as a defendant in case against a federal agency, courts in this district have held that "the party must establish that it will be 'injured by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld.'" *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 (D.D.C. 2016), quoting *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001).

In its motion, Yocha Dehe states that "[i]f [DOI's] decision were set aside, Yocha Dehe would suffer severe injury to its existing gaming facility, as well as the tribal programs and services reliant on revenues from that facility." Yocha Dehe's Mem. at 6.  Revenues from Yocha Dehe's gaming casino "are used to fund the tribal government, and they support a variety of tribal programs and services, including providing for the education, employment, housing, and healthcare of tribal citizens." *Id.* at 2, citing the Declaration of Yocha Dehe's Chairman, Anthony Roberts [Dkt. # 17-2] ("Roberts Decl.") ¶ 4.  One program funded with revenues from Yocha Dehe's casino is the cultural resources department, "which works with nearby governments to

protect Patwin sacred sites throughout Yocha Dehe's ancestral territory." *Id.*, citing Roberts Decl. ¶ 5.[2]

These allegations may satisfy the "concrete and particularized" prong of the injury-in-fact element. But Yocha Dehe has failed to show that these potential future harms, which are not yet "actual," can be characterized as "imminent," or "certainly impending," in accordance with Supreme Court precedent. *See Clapper*, 568 U.S. at 410 (2013); *see also Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1293 (D.C. Cir. 2007) (the injury must be "certainly impending and immediate – not remote, speculative, conjectural, or hypothetical").

What the Yocha Dehe Nation fears is the diminution of its casino revenues, and the likely resulting impact on its ability to support educational programs and preserve cultural sites. But the record reflects that even if the plaintiff prevails, and the Court invalidates the decision under review – DOI's denial of Scotts Valley's request for an Indian Land Opinion – that does not mean that Scotts Valley will have secured the right to erect a competing gaming facility on the land. As Scotts Valley explains, "[t]he Department's action is only one step in a multi-step administrative process to establish a tribal casino for a restored tribe under the IGRA." Scotts Valley's Opp. at 2. It adds that even if the DOI were to grant Scotts Valley a favorable ILO, it would still need to:

> [S]ucceed in an application to place the land into trust, complete a detailed Environmental Impact Statement, . . . obtain federal approval of a gaming

---

2       In his declaration, Roberts states, "Scotts Valley's effort to establish a gaming facility in the heart of the San Francisco Bay area . . . directly threatens my Tribe's interests in multiple ways. First, Solano County is the indisputable ancestral territory of the Patwin People, and our Tribe . . . is responsible for protecting sacred sites and cultural resources buried throughout the county of Solano. In fact, the very site Scotts Valley seeks to develop holds cultural resources affiliated with our Patwin ancestors." Roberts Decl. ¶ 2. But the declaration does not identify any harm that would come to the cultural sites themselves – any threatened physical impingement or degradation of their value or sacred character; what the declaration details is the likely significant impact on the Tribe of the potential loss of revenue due to the establishment of a competing casino, and the fact that that revenue is used, among other things, for the preservation of cultural resources. *See* Roberts Decl. ¶¶ 3, 4, 5, and 10.

> compact with the State of California, obtain federal approval of a tribal gaming ordinance, and obtain federal approval of a management contract if the facility is not managed by the tribe itself.

Scotts Valley's Opp. at 2, citing 25 U.S.C. § 5108 and 25 C.F.R. part 151 (for the trust application); 42 U.S.C. § 4321, *et seq*. and 43 C.F.R. part 46 (2020) (for the environmental study); 25 U.S.C. §§ 2010-11 and 25 C.F.R. parts 293, 531, 533, and 535 (2020) (for the tribal gaming licenses and management contracts). In other words, a review of the statutory regime reveals that the decision at issue is not the sole or final hurdle Scotts Valley must overcome to build its casino, and its reversal would not necessarily bring about the threat to Yocha Dehe's economic interests.

The Court recognizes that neighboring or competing tribes often present grounds for intervening in disputes over the use of tribal lands in general and the operation of gaming facilities in particular. But the circumstances presented here differentiate this case from the decisions relied upon by Yocha Dehe. *See* Yocha Dehe's Mem. at 6. In *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5 (D.D.C. 2019), the Sault Ste. Marie Tribe challenged DOI's denial of its request that the agency take two parcels of land into trust for the Tribe to enable it to build casinos on the property. In finding that nearby tribes and casinos had standing to intervene as defendants, the court noted that "[t]he Department's decision not to take the parcels of land into trust has prevented the Sault Tribe from opening gaming facilities . . . . And if the Court orders the Department to reverse its decision, the Sault Tribe would likely be free to open casinos on the parcels." *Id*. at 10. Importantly, the court noted that "[t]he Department's decision likely represents the *last significant hurdle* preventing the Tribe from opening new gaming facilities[.]" *Id*. at 11 (emphasis added).

Similarly, in *Connecticut v. DOI*, the court held that a casino operator had standing to intervene in a case in which the plaintiffs, the State of Connecticut and Indian Tribes, sought

reconsideration of a DOI decision denying their requests to amend federally-imposed procedures authorizing gambling on the Tribes' land. 344 F. Supp. 3d 279, 288 (D.D.C. 2018). In determining that the casino had standing to intervene, the Court noted that if the plaintiffs were successful on remand, the amendment "would give the Tribes an advantage in the state commercial casino market over private casino developers like [the intervenor]," and the casino would *immediately* lose its ability to lobby the Connecticut legislature for casino approval on equal footing with the Tribes. *Id*. at 298, 302. It also gave weight to the fact that the Tribes had already been given conditional approval to operate a competitor casino pending approval of the proposed amendments, which the court called the "only condition remaining to be fulfilled." *Id*. at 299. So in both cases, a decision in favor of the plaintiff in the action would eliminate the final procedural barrier to the opening of the competing casino and bring about the injury to the proposed intervenor.

But here, because Scotts Valley is seeking review of a threshold determination that must be made before it can even apply for permission to establish a casino, and a decision that is but one in a series of many that must be decided in its favor before it can succeed, Yocha Dehe cannot show that the harm it fears is imminent or "certainly impending and immediate," *see Pub. Citizen, Inc.*, 489 F.3d at 1293, or even, that there is a "substantial risk" that it will come about. *See Attias,* 865 F.3d at 626. Thus, the Court is not convinced that Yocha Dehe has demonstrated the first element of Article III standing: injury in fact.

For similar reasons, Yocha Dehe's showing is weak on the second *Lujan* element: causation. *Lujan*, 504 U.S. at 561; *Am. Horse Prot. Ass'n*, 200 F.R.D. at 156. "It is well established that '[c]ausation, or traceability, examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized

injury[.]'" *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 176 (D.C. Cir. 2012) (alteration in original), quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). In a case such as this, where there are a series of steps with multiple decision makers standing between Scotts Valley and the proposed development, the movant cannot demonstrate that it is substantially probable that the remand, or even the reversal of the preliminary DOI decision at issue will result in lost revenue to Yocha Dehe. *See Ctr. for Biological Diversity v. DOI*, 563 F.3d 466, 478 (D.C. Cir. 2009) ("The more attenuated or indirect the chain of causation between the government's conduct and the plaintiff's injury, the less likely the plaintiff will be able to establish a causal link sufficient for standing.").

For these reasons, the Court is not convinced that Yocha Dehe has established standing.[3] But even if one were to conclude that its allegations are not purely "remote, speculative, conjectural, or hypothetical," *see Pub. Citizen, Inc.*, 489 F.3d at 1293, and that the movant can overcome the jurisdictional but relatively "low bar" imposed by the standing requirement, *Attias*, 865 F.3d at 622, the movant cannot make the showing required under Rule 24.

## II. Even if Yocha Dehe has standing, it has not satisfied the requirements to intervene as of right.

As an initial matter, the Court finds that Yocha Dehe's motion was timely. "[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Scotts Valley does not argue that the motion was untimely,

---

3   The Court does find that Yocha Dehe has met the third prong of the standing test – that its injuries would be prevented if the DOI's decision is upheld. *See Forest Cnty. Potawatomi Cmty.*, 317 F.R.D. at 11.

and it was filed just one month after the government filed the answer and before any dispositive motions practice had begun.  The motion, therefore, did not disrupt the litigation, and was timely.

Next, assuming that Yocha Dehe has established standing, it has, according to Circuit precedent, necessarily established the second Rule 24(a) requirement:  that it has a legally protected interest in the action.  *See Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003)  ("Our conclusion that the [movant] has constitutional standing is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action.'"); *Mova Pharm. Corp. v. Shalala,* 140 F. 3d 1060, 1076 (D.C. Cir. 1998) (the movant "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposed of Rule 24(a).").

But the third requirement – that the would-be intervenor's interest in the property or transaction is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect that interest, Fed. R. Civ. P. 24(a)(2) – has not been established here.  For this, the Court must assess the "practical consequences" of denying intervention in this case. *Fund for Animals,* 322 F.3d at 735.

Yocha Dehe argues that denying the Tribe's motion to intervene would "exclude Yocha Dehe from a dispute that centers on [its] history, [its] aboriginal territory, and historical evidence that [it] introduced into the administrative record demonstrating that others had no significant connection to the Parcel."  Yocha Dehe's Mem. at 8.  But DOI has already determined that the parcel at issue does not qualify as a restored land, thereby foreclosing Scotts Valley's ability to seek or obtain permission to build a gaming facility on the land.  *See* Compl. ¶ 33.  So if this Court finds, based on the record before it, that DOI's decision was proper, Yocha Dehe's concerns will be obviated and the case will have no practical consequences for the movant.

13

What would happen if the Court were to rule in Scotts Valley's favor? Yocha Dehe has not shown that a decision by this Court overturning and remanding DOI's finding that the parcel is not "restored land," would impair or impede its ability to protect its interests. As the movant notes and the Administrative Record reflects, Yocha Dehe submitted a considerable volume of material about its historical connection to the land when the question about Scotts Valley's association with the parcel was pending before the agency the first time, and it can do so again. Yocha Dehe's Mem. at 8; *see, e.g.,* AR [Dkt. # 23] at 17 (reflecting twenty-one submissions to the Administrative Record by Yocha Dehe). And if Scotts Valley succeeds in obtaining the ILO the second time around, and it gains the right to *apply* to operate a gaming facility on the "restored lands," there will be opportunities for public notice and comment throughout the administrative proceedings under the IGRA. *See* Scotts Valley's Opp. at 7; *see also* 25 C.F.R. part 151.12 (2020) (third parties may participate in and comment on a tribe's request that the DOI take lands into trust the tribe's behalf) and 43 C.F.R. § 46.435 (2020) ("A bureau must seek comment from the public as part of the Notice of Intent to prepare an environmental impact statement"). The availability of multiple opportunities for Yocha Dehe to be heard in the future even if Scotts Valley succeeds here distinguishes this case from the circumstances present in *Connecticut v. DOI*, 344 F. Supp. 3d at 304 ("For the same reasons MGM has standing to intervene – reversal of the Secretary's decision would immediately diminish MGM's chances of securing approval for its Bridgeport casino proposal over the Tribes' competing proposal, and would create imminent competition for MGM's Springfield casino – MGM has demonstrated a legally protected interest in the action that may be impaired if intervention is denied.") or *Sault Ste. Marie*, 331 F.R.D. at 13 ([T]here is no question that the task of reestablishing the status quo if the Department is compelled to take the parcels of land into trust will be difficult and burdensome.") (internal quotation omitted).

For this reason, the record does not support Yocha Dehe's motion to intervene as of right in this proceeding pursuant to Federal Rule 24(a).[4] And because the Court has serious doubts that Yocha Dehe has standing to intervene, and the movant has not specified the claim or defense it may have "that shares with the main action a common question of law or fact," *see* Fed. R. Civ. P. 24(b), it will not exercise its discretion to grant permissive intervention.

## CONCLUSION

For the foregoing reasons, Yocha Dehe's motion to intervene is **DENIED**. However, in its discretion, the Court will permit Yocha Dehe to submit an amicus brief in support of defendants' dispositive motion when this case reaches that stage of the litigation. This is a final appealable Order.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: September 28, 2020

---

[4]   Based on the Court's determination that Yocha Dehe has not satisfied the second or third factors in the Rule 24(a) analysis, it need not reach the final factor: whether the DOI will adequately represent its interests in this litigation. Fed. R. Civ. P. 24(a)(2).