1                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
2

3      Scotts Valley Band of Pomo        )
       Indians,                          ) Civil Action
4                                        ) No. 19-cv-1544
                         Plaintiff,      )
5                                        ) BENCH RULING
       vs.                               )
6                                        ) Washington, DC
       United States Department of       ) May 8, 2023
7      the Interior, et al.,             ) Time:  2:00 p.m.
                                         )
8                        Defendants.     )
       _____
9

10                   TRANSCRIPT OF BENCH RULING
                            HELD BEFORE
11            THE HONORABLE JUDGE AMY BERMAN JACKSON
                    UNITED STATES DISTRICT JUDGE
12     _____

                          A P P E A R A N C E S
13

14     For Plaintiff:      **Arlinda Locklear**
                           Law Office of Arlinda Locklear
15                         4113 Jenifer Street, NW
                           Washington, DC  20015
16                         (202) 237-0933
                           Email:  Alocklearesq@verizon.net
17                         **Patrick Bergin**
                           Peebles Kidder Bergin & Robinson, LLP
18                         2020 L Street, Suite 250
                           Sacramento, CA  95811
19                         (916) 441-2067
                           Email:  Pbergin@ndnlaw.com

20     For Defendants:     **Devon McCune**
                           U.S. Department of Justice
21                         South Terrace, Suite 370
                           Denver, CO  80202
22                         (303) 844-1487
                           Email:  Devon.mccune@usdoj.gov
23     _____

24     Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                               United States Courthouse, Room 6523
25                             333 Constitution Avenue, NW
                               Washington, DC  20001

```
 1      *  *  *  *  *  * *P R O C E E D I N G S*  *  *  *  *  *  *
 2           THE COURTROOM DEPUTY:  Good afternoon, Your Honor,
 3      this afternoon we have civil action number 19-1544, Scotts
 4      Valley Band of Pomo Indians versus the United States department
 5      of the Interior, et al.
 6           Could I get counsel for the plaintiffs please to
 7      approach the lectern and identify themselves for the record,
 8      followed by the defense.
 9           MS. LOCKLEAR:  Good afternoon, Your Honor.  Arlinda
10      Locklear and Patrick Bergin on behalf of the plaintiff Scotts
11      Valley Band of Pomo Indians.  And if I may take the Court's
12      indulgence for just one moment and introduce, we have Shawn
13      Davis, who is Chairman of the tribe; Jesse Gonzalez,
14      vice-chair; Crista Ray, secretary, and; Gabriel Ray, counsel
15      member.
16           THE COURT:  All right.  Thank you.
17           MS. LOCKLEAR:  Thank you.
18           MS. McCUNE:  Good afternoon, Your Honor Devon McCune
19      with the Department of Justice.  And with me at counsel table
20      is Joel West Williams, he's the deputy solicitor for Indian
21      Affairs at the Department of Interior.
22           THE COURT:  Good afternoon, everyone.
23           On September 30th, 2022 this court, at long last,
24      issued it's memorandum opinion ruling on the parties cross
25      motions for summary judgment, granting each in part and denying
```

1    each in part.

2         As you all know well, plaintiffs challenged the

3    February 7th, 2019 Indian Lands opinion issued by the then

4    Principal Deputy to the Assistant Secretary, John Tahsuda.  It

5    found that a parcel of land in the City of Vallejo, California

6    would not qualify for gaming under what is known as the

7    restored lands exception in the Indian Gaming Regulatory Act,

8    25 U.S. Code § 2701, et sec.

9         This decision rendered the land ineligible for gaming

10   purchases under the IGRA and barred Scotts valley's efforts to

11   acquire the land to establish a casino.  Plaintiff sought

12   summary judgment on the grounds that the agency's decision was

13   arbitrary, capricious, and otherwise not in accordance with law

14   in contravention of the Administrative Procedure Act, and it

15   asked the Court to remand the ILO to the agency for

16   reconsideration.  It was docket 48.

17        The defendants moved for summary judgment on the

18   basis that the ILO was procedurally sound, the agency followed

19   its implementing regulations in rendering the decision, and the

20   regulations were based on permissible interpretations of the

21   underlying statutes.  That was docket 54.

22        My opinion, at docket 64, entered judgment in favor

23   of the agency on the issues of whether Tashuda had the

24   authority to issue the February 7, 2019 ILO; whether the agency

25   exceeded its authority under the IGRA when it promulgated Part

1   292, 25 C.F.R. § 292, interpreting the restored lands exception

2   in the IGRA and whether, purely for purposes of the

3   Administrative Procedure Act, under which the agency's decision

4   making is accorded some deference, the agency examined the

5   relevant data and set forth a reasoned basis for its decision

6   in the ILO.

7          But I emphasized that the review of the agency action

8   doesn't operate in a vacuum, and that it was equally important

9   for me to evaluate whether the decision was in accordance with

10   law through the lens of the Indian canon of construction.  And

11   it was that exercise that led me to the conclusion that the ILO

12   could not be sustained.

13          The agency's decision involved the application of a

14   provision in a regulation promulgated to implement an ambiguous

15   provision in a statute passed for the benefit of Native

16   Americans.  Resolving all inferences and doubts in favor of the

17   band, then, I found that the ILO was arbitrary and capricious

18   and not in accordance with law as it did not give fair

19   consideration to the historical circumstances that severed the

20   Band's connection with the -- to its land in the first place

21   and left the Band in a disadvantageous position compared to

22   other tribes, and that it failed to consider the fundamental

23   remedial nature of the statute at the heart of the case.

24          For those reasons, I entered judgment in favor of the

25   plaintiff on that issue and remand the ILO to the agency.

1          About ten days later, on October 28th, 2022,

2     defendant moved for reconsideration under Federal Rule of Civil

3     Procedure 59(e).  That was at docket 65.  This has been fully

4     briefed.  There's an opposition at docket 65 and a reply at

5     docket 68.

6          The defendant was satisfied with all of my rulings

7     except the remand.  It took umbrage at the Court's

8     consideration of the canon of Indian construction in connection

9     with the portion of the opinion addressing the reasonableness

10    of the agency's decision and its interpretation of its own

11    regulation.

12         The agency maintains, quote, Reconsideration is

13    appropriate because the parties did not brief this issue during

14    summary judgment proceedings, and because the Court's ruling on

15    this point is clear error.

16         I respect the fact that this motion raises a serious

17    legal question regarding the role that the Indian canon of

18    construction is supposed to play in proceedings like these,

19    where the court is being asked to review an individual agency

20    decision, and a decision in which the agency was implementing a

21    statutory provision, as opposed to explicitly interpreting a

22    statutory provision.

23         But I don't find either ground for reconsideration

24    persuasive, and I certainly don't agree that the canon came up

25    for the first time in my opinion; it had been mentioned in the

1    pleadings, it was discussed in the cases both sides relied

2    upon, and I asked questions about it at the hearing.

3            I wrestled with what the canon called for for some

4    time after that when I drafted the opinion.  There was limited

5    circuit authority.  It had come up most often before in a

6    situation where a third party was trying to challenge a

7    decision the agency had already made in favor of a tribe.  But

8    nothing about that circumstance gives rise to a directive that

9    it couldn't or shouldn't apply in this case too.

10           And, so, I'm going to issue my ruling now on the

11   motion for reconsideration.  I don't want to delay this case

12   any further by how long it would take me to turn what I'm about

13   to say into a polished published opinion, making sure all the

14   commas are in the right place and making sure I love all the

15   adjectives.  So the transcript of today's proceeding will be my

16   ruling on the motion for reconsideration.

17           The standard to be followed is clear.  In *Ciralsky*

18   *versus CIA*, 355 F.3d 661, at page 671, the D.C. Circuit said,

19   in 2004, quoting *Firestone versus Firestone*, 76 F.3d 1205, at

20   1208, quote, a Rule 59(e) motion is discretionary and need not

21   be granted unless the district court finds that there is an

22   intervening change of controlling law, the availability of new

23   evidence, or the need to correct a clear error or prevent

24   manifest injustice.

25           Courts in this district have emphasized that such

1    motions are disfavored and should only be granted under

2    extraordinary circumstances, that motions to alter or amend a

3    judgment under Rule 59(e) are not supposed to be used to

4    relitigate matters already argued and disposed of.  And they're

5    not a vehicle for presenting theories or arguments that could

6    have been advanced earlier.  Rather, they're intended to permit

7    the court to correct errors of fact appearing on the face of

8    the record, or errors of law.

9            The memorandum opinion details the procedural history

10   and the legal context for the decision at issue in great detail

11   and it doesn't need to all be laid out again, but a few points

12   bear repeating.

13           The band made a formal request for an Indian Lands

14   opinion on January 28, 2016.  It said:  We are writing on

15   behalf of the Scotts Valley Band of Pomo Indians in support of

16   its request for an opinion pursuant to 25 CFR 292.3(b), that a

17   certain parcel of newly acquired lands located in Vallejo,

18   California, meets, or will meet, one of the exceptions under

19   subpart B of part 292, such that gaming will be allowed on the

20   lands in accordance with the Indian Gaming Regulatory Act, 25

21   U.S. Code 2719(a).

22           The lands are being purchased for the tribe and the

23   tribe will be requesting the secretary to take into trust on

24   its behalf in the next several months.

25           Specifically, the tribe seeks a determination that

1    the lands will meet the requirements of the restored lands

2    exception of § 2719(b)(1)(B)(iii) in accordance with the

3    provisions of 25 CFR 292.7 upon the lands being taken into

4    trust.  And that letter is found at page 8 of the

5    administrative record.

6           So they're asking whether the lands meet the

7    statutory exception in accordance with the reg.

8           The decision -- the ILO is found at page 11597 of the

9    administrative record, and it was issued on February 7th, 2019.

10   It says, on page 1, that the Band requested a, quote, restored

11   lands, close quote, determination.  That's a reference to the

12   statute.  Tashuda writes, quote, I have, therefore, considered

13   whether the parcel, if taken into trust, would qualify as

14   restored lands within the meaning of federal regulations.  And

15   he cites 25 CFR 292.7, in footnote 3, as setting forth the

16   criteria.

17          If the parcel does qualify, he said, then it would be

18   exempt, citing 25 U.S. Code 2719(b)(1)(B)(iii).  But then he

19   said:  The department has determined that the parcel does not

20   qualify as restored lands within the meaning of the applicable

21   law.  Which gives rise to the question:  Is the reg. the law or

22   is the statute the law?  The letter doesn't differentiate at

23   that point.

24          But then Tashuda goes on to say:  The Band failed to

25   provide sufficient evidence of a, quote, significant historical

1    connection to the parcel, quote, as required to qualify for the

2    restored lands exception, close quote.  That is language from

3    the reg.

4        Page 2 of the Tashuda letter has a section entitled

5    Legal Framework and it begins with the IGRA and the restored

6    lands exception in § 2719(b)(1)(B)(iii) and then it

7    specifically notes, citing the D.C. Circuit's opinion in *City

8    of Roseville versus Norton*, 348 F.3d 1020, at 1030, from the

9    Circuit in 2013, that, quote, One of the purposes behind the

10   restored lands exception is ensuring that tribes lacking

11   reservations when the IGRA was enacted are not disadvantaged

12   relative to the more established ones, close quote.

13       Then on page 2, Tashuda writes, quote, Part 292 of

14   Title 29 CFR implements § 20 of the IGRA.

15       The ILO recites the language in § 292.12 that a tribe

16   invoking the restored lands exception must demonstrate:  Modern

17   connections to the newly acquired land; quote, a significant

18   historical connection to the land, close quote, and; a temporal

19   connection between the date of the acquisition of the land and

20   the date of the tribe's restoration.

21       There were in issues with the first and third

22   elements of that test.  But Tashuda points to the definition of

23   significant historical connection in § 292.2 and he announces

24   the conclusion that will be elaborated further in his opinion.

25   He said at that point:  The Band has not made the required

1  slowing, and the parcel does not qualify as restored lands

2  within the meaning of the IGRA.  Note:  He says, "Within the

3  meaning of the IGRA."

4        Similarly, on page 19, after reviewing the entire

5  record, he reaches his determination.  And he says:  The tribe

6  has failed to demonstrate the required significant historical

7  connection.  Consequently, he says, quote, the department

8  should decline to take the Vallejo parcel in trust for gaming

9  purposes as the parcel does not meet the regulatory

10  requirements necessary to qualify for the restored lands

11  exception to the IGRA, close quote.

12        The government first suggests that I injected the

13  canon into the case out of the blue, that I shouldn't have

14  applied the canon when considering the reasonableness of the

15  agency's decision because no one asked me to do that in the

16  summary judgment briefing.

17        That's not quite accurate.  The plaintiff didn't

18  brief the canon extensively, but in its initial memorandum in

19  support of summary judgment, docket 48-1, it clearly raised the

20  canon, albeit in connection with the requirement of a, quote,

21  significant, close quote, historical connection in the reg.  At

22  pages 23 to 24 the Band said:

23        Even where IGRA deemed ambiguous with regard to the

24  restored lands exception, the court is not obliged to defer to

25  the agency's interpretation under *Chevron* that the exception

1    requires a significant historical connection.  As another court

2    in this district held in *Koi Nation*, the deference normally

3    extended to reasonably agency interpretation of ambiguous

4    statutes may be trumped by a special rule applicable to the

5    construction of statutes regulating Indian affairs, that is,

6    statutes enacted for the benefit of Indians must be liberally

7    construed in favor of Indians, with ambiguous provisions

8    interpreted to the Indians' benefit.  That's in the brief at

9    pages 23 to 24.

10            And then the plaintiff went on to say that the D.C.

11   Circuit had ruled on two occasions that this rule of statutory

12   construction applies to liberally construe the IGRA exceptions

13   to the general bar against gaming on after-acquired Indian

14   lands, including the restored lands exception.  And it pointed

15   me to *Citizens Exposing Truth About Casinos versus Kempthorne*,

16   492 F.3d 460, from the D.C. Circuit in 2007, and the *City of*

17   *Roseville* opinion, that had already been quoted in the Tashuda

18   letter, at 348 F.3d at page 1032.

19            And they argued, the Band argued because the agency's

20   interpretation here conflicts with the best interests of a

21   restored tribe that Congress intended to benefit, the gloss

22   that the agency imposed on the statute by requiring that the

23   historical connection be a significant one violates the IGRA,

24   construed in accordance with this long-standing canon of

25   statutory construction.

1          In its reply in docket 57 the Band went into this

2    point in more depth.  It rejected the government's heavy

3    reliance on Ninth Circuit authority, which doesn't have the

4    same view of the canon as the D.C. Circuit.

5          For its part, in Section 1 of its opposition and

6    cross-motion for summary judgment, at docket 54-1, which was

7    entitled, The Court Must Defer to the Secretary's Permissible

8    Construction of IGRA in Part 292.  The government took the

9    position that the Court must defer to interior under *Chevron*

10   and that's it.  The term "restoration of lands" in the statute

11   was ambiguous, so the agency's interpretation of the reg. was

12   entitled to *Chevron* deference.

13         And the government argued, at pages 20 to 22, in

14   reliance upon a few sentences in a few district court opinions,

15   that the canon shouldn't play a role at all because it doesn't

16   apply for the benefit of one tribe if its application would

17   adversely affect the interests of another tribe.

18         I'm not clear how that would bear on the statutory

19   interpretation issue.

20         But the government said the canon is inapplicable

21   because there's no single interpretation that would benefit all

22   Indians in the collective, and it added that in this particular

23   case, attempted intervention by another tribe shows that

24   applying the canon to benefit Scotts Valley could very well be

25   detrimental to other tribes.

1          But when it got to the purpose of the IGRA, the

2     government relied most heavily on out-of-circuit authority, the

3     *Rancheria* case from the Ninth Circuit, which found, contrary to

4     the D.C. Circuit cases that are binding on me, and it held that

5     the IGRA isn't supposed to give restored tribes an advantage

6     over more established tribes.

7          So it didn't even acknowledge that the canon could

8     play a role in the statutory interpretation aspect of the case

9     either.

10          With respect to the reg. and part 292, the thrust of

11     the government's argument in its brief, that the agency

12     properly, quote, defined and placed limits on the IGRA

13     exception, it said, on page 11, again citing the Ninth

14     Circuit's decision in *Rancheria* and nothing from this circuit,

15     that was its argument, that it was okay for the agency to limit

16     the exception.

17          That argument was inconsistent with our circuit

18     precedent regarding how broadly the notion of restoration

19     should be interpreted given the purpose underlying the

20     exceptions in the IGRA, and it surely would have been

21     inconsistent with the canon.  But at oral argument, Interior

22     backed away from the notion that the statute had been properly,

23     quote, narrowed, close quote, or that it would have been okay

24     for the agency to narrow it.  So I didn't address that argument

25     in my opinion.

1          Section II of the agency's brief was entitled

2     Interior's Application of the Restored Lands Exception to

3     Scotts Valley Properly Applied the Part 292 Requirements and

4     was not Arbitrary and Capricious.  This is the section in which

5     the government was defending the agency's decision, the ILO,

6     and not the regulation itself.  And either the agency thought

7     or it understood that the plaintiff thought that the canon was

8     relevant there, too, because it was the agency that addressed

9     the canon in that part of its briefing.

10          At page 27 the agency told me:  The Indian canon does

11    not change the reasonableness of Interior's interpretation

12    here.  Several juges in this district have held that the Indian

13    canon of construction does not apply for the benefit of one

14    tribe if its application would adversely affect the interests

15    of another tribe.  And then on page 29 the agency told me:  In

16    short, the Indian canon cannot save Scotts Valley where its

17    preferred interpretation of IGRA could very well be to the

18    detriment of other tribes.

19          That was pretty much the end of any mention of the

20    canon by the government.  It gave it the back of its hand.  But

21    it's point was that it doesn't apply in this particular

22    instance of applying Part 292 because there are competing

23    tribes.  It did not say then what it's saying now, which is the

24    canon is only relevant when you're construing the statute and

25    considering the validity of Part 292.

1          The agency's sole point then was that it wouldn't

2     apply to a situation where two tribes would be placed in

3     competition.  It specifically wanted me to think about that.

4     And that argument, that concept, could only relate to the

5     agency's 2019 consideration of plaintiff's individual

6     application and not the 2008 promulgation of the regs because a

7     situation pitting one tribe against another tribe doesn't even

8     arise unless and until the department was faced with a

9     particular application for a particular parcel.

10         And I didn't understand how it could be that the

11    standard that would apply when reviewing an ILO would vary with

12    whether there was an intervenor, and I asked about that at the

13    hearing.  I don't believe the government told me then, oh, no,

14    it only applies when interpreting a statute for the purpose of

15    considering the validity of the reg. and not the validity of

16    the ILO.

17         But even if I failed to appreciate the nuances of its

18    position and it was thinking something slightly different than

19    what it said, and it was arguing then what it's arguing now,

20    that the canon only applies when you interpret statutes, and

21    that only statutes that would benefit one tribe at the expense

22    of another, there aren't very many of those.  And I think it's

23    disappointing that the agency, with the trust relationship with

24    all the tribes, takes that narrow of view.  And that view just

25    isn't consistent with the legal precedent in this circuit as I

1   read it.

2          The government told me in its briefing the first time

3   around that the canon doesn't overrule *Chevron* or the APA, but

4   I'm not going that far.  My point was that the canon also plays

5   a role when a court is assessing an agency decision under the

6   APA; whether it was reasonable and whether it was in accordance

7   with law.  And the deference alone, the level of which has not

8   at all been clarified by this circuit, doesn't carry the day.

9          But even if I were to agree that the canon was put

10  before me primarily in connection with the agency's

11  interpretation of the statute when it promulgated the reg. and

12  not in connection with the agency's interpretation of the reg.

13  when it issued the ILO, I don't think that makes the canon

14  irrelevant to the ILO.

15         And at the outset, I need to clarify something.  The

16  government complains that I've imposed a new requirement on the

17  agency, and that the agency should not be required to consider

18  the canon when applying the reg. in connection with a lands

19  opinion.  It said that in its motion for reconsideration, at

20  page 1, when it moved the Court to reconsider that portion of

21  my opinion, quote, which holds that the department was required

22  to apply the Indian canon of construction, close quote.

23         The memorandum opinion did not say that.  I didn't

24  rule that the Department of Interior had to apply the canyon.

25  I said it was a tool and a principle of statutory construction

1      that the Court was supposed to utilize when assessing whether

2      the agency's decision about the restored lands exception, which

3      is a statutory provision, was reasonable and in accordance with

4      law.

5              In my memorandum, at pages 2 to 3 in the

6      introduction, I said:  However, even if one grants the agency's

7      analysis due deference, the application of the well-settled

8      Indian canon of statutory construction that the Court is also

9      required to consider leads to the conclusion that the ILO

10     cannot be sustained.  Resolving all inference and doubts in

11     favor of the Band, the Court finds that the ILO is arbitrary

12     and capricious, does not give fair consideration to the

13     historical circumstances that severed the band's connection to

14     its land in the first place, and left the Band in a

15     disadvantageous position compared to other tribes.

16             Then in the section of the opinion that the

17     government is challenging, § III (B), I said the review of the

18     agency action does not operate in a vacuum, and the equally

19     important evaluation of the decision through the lens of the

20     Indian canon of construction requires that the decision be

21     vacated and remanded to the agency.  That was at page 51.

22             Then I said, on pages 56 to 57, given the clear law

23     in this circuit that directs district courts to favor the

24     tribes, the Court concludes that it is incumbent upon it to

25     deny the government's motion on these grounds and to grant the

1    plaintiff's.  The court recognizes that it's not its role to

2    scour through the ILO and substitute its judgment for that of

3    the agency.  While one can read the opinion with only a *Chevron*

4    hat on and nod along, a different outcome is required if the

5    one gives the Band the benefit of every inference and

6    interprets the restored lands exception and the regulation

7    adopted to clarify -- but not narrow -- it in a manner that

8    resolves any doubt in the Band's favor.

9         So I don't agree that the agency can sidestep that

10   sort of scrutiny by the Court and say, well, all we did was

11   apply our regulation and you, judge, have to defer to that.

12   The regulation is the guidepost for how to apply the law, but

13   it's not the law.

14        The defense motion is predicated on an assumption

15   that the statute was not what was being applied in the Tashuda

16   letter, and the interpretation of the statute in the

17   promulgation of the reg. was an entirely separate issue in this

18   case on which it prevailed.

19        But I think it's somewhat disingenuous, and at least

20   highly artificial, to say that when you issued the ILO, the

21   department is only applying a reg. and it's not applying the

22   statute.  The two were intertwined in the Band's letter when it

23   requested the ILO.  The two were intertwined in the ILO itself.

24   Yes, it said the parcel didn't qualify as, quote, restored

25   lands, close quote, under the reg, but it also said the Band

1    has not made the required showing, and the parcel does not

2    qualify within the meaning of the IGRA.

3           It's important to understand that the restored lands

4    exception that either would or would not apply in this instance

5    is a statutory provision.  The reg. itself doesn't confer any

6    rights at all.

7           And the final rule, at 73 Fed. Reg. 29354, May 20th,

8    2008, at pages 29354, the agency said the regulations implement

9    § 2719 of the IGRA by articulating standards that the

10   department will follow in interpreting the various exceptions

11   to the gaming prohibition in after-acquired trust lands

12   contained in § 2719 of the IGRA.

13          It also said, quote, subpart B articulates what

14   criteria must be met for a parcel of land to qualify under the

15   restored land for a restored tribe exception contained in

16   § 2719(b)(1)(B)(iii) of the IGRA, close quote.

17          And as I noted earlier, the ILO links the two every

18   time it sets out its conclusion.

19          And even the government's own memorandum in support

20   of its motion for summary judgment said, at page 37, quote,

21   Here, the problem faced by Interior was whether the Vallejo

22   parcel would qualify as a restoration of lands under IGRA.

23          Also, plaintiff explicitly challenged the ILO under

24   the APA on the grounds that the ILO failed altogether to

25   consider Congress's policy objectives for the IGRA.  That's in

1    their motion at page 34.  And the defense said in response in

2    its motion, at page 32, Interior applied the appropriate

3    statutory and regulatory requirements and did not violate the

4    APA.

5            So defendant's own characterization of the nature of

6    the inquiry before the agency and before this Court, and its

7    suggesting that there's a bright line between applying the

8    statute and applying the reg, is inaccurate in my view and

9    doesn't reflect the reality of the situation.

10           And in any event, the parties have briefed it fully

11   now, and the pleadings on reconsideration, putting aside the

12   question of whether these arguments could or should have been

13   made before, do not persuade me that my judgment should be

14   altered.  The law cited by the government does not compel the

15   result it's requesting.

16           First, the motion for reconsideration, at page 7,

17   points me to what it calls, quote, the leading treatise on

18   federal Indian law, close quote, *Cohen's Handbook*, and says

19   it's contrary to my analysis.

20           So I thought I better look at that.  And it turns out

21   that the very section of the treatise that the government cited

22   supports the memorandum opinion.  1 *Cohen's Handbook of Federal*

23   *Indian Law* § 2.02, entitled Canons of Construction, says, in

24   paragraph 1, Overview of the Principles, quote:

25           The theory and practice of interpretation in federal

1    Indian law differs from that of other fields of law.  The basic

2    Indian law canons of construction require that treaties,

3    agreements, statutes, and executive orders he liberally

4    construed in favor of the Indians and that ambiguities are to

5    be resolved in their favor.

6          These canons were first developed in the context of

7    treaty interpretation, but the courts have consistently

8    extended them to non-treaty sources of positive law such as

9    agreements, statutes, executive orders, and federal

10   regulations, close quote.

11         That's in the treatise that the government quoted to

12   me.

13         The treatise then cites *HRI Inc., versus E.P.A.*, 198

14   F.3d 1224, from the Tenth Circuit in 2000, in which that court

15   observed, at page 1245, the trust relationship and its

16   application to all federal agencies that may deal with Indians

17   necessarily requires the application of a similar canon of

18   construction to the interpretation of federal regulations,

19   close quote.  So there's that.

20         Also, the Supreme Court case as the government cited

21   doesn't stand for the proposition that the canon can only be

22   applied when you're interpreting a statute; it's just that

23   generally in those cases it has been applied to statutes.

24         The government cites *Montana versus Blackfeet Tribe*,

25   471 U.S. 759, in 1985.  In that case the issue was can a

1    state -- can a state tax royalties paid to tribes under oil and

2    gas leases under the Indian Mineral Leasing Act?  And the

3    answer was no.

4         The Supreme Court emphasized that the standard

5    principles of statutory construction do not have their usual

6    force in cases involving Indian law.  It quoted an earlier case

7    from 1985 that said the canons of construction applicable in

8    Indian law are rooted in the unique trust relationship between

9    the United States and the Indians.  It cited another canon

10   regarding the taxation of Indians and also the canon that

11   statutes are to be construed liberally in favor of the Indians,

12   with ambiguous provisions interpreted to their benefit.

13        You can't read that general statement to mean that

14   the application of the canon is limited to statutes.  That

15   question wasn't presented.

16        The department also cites *Chickasaw Nation versus*

17   *United States*, 534 U.S. 84, from 2001.  Two tribes in that case

18   took the position they were exempt from federal gaming related

19   excise and occupational taxes under the IGRA.  The IGRA says

20   the provisions of the Internal Revenue Code concerning the

21   reporting and withholding of taxes that apply to the states,

22   including Chapter 35, shall apply to the tribes in the same

23   way.

24        The problem there was that Chapter 35 doesn't relate

25   to the reporting and withholding of taxes; it imposes taxes

1    from which certain state-controlled gambling activities were

2    exempt.  And the IGRA was silent on tax provisions that don't

3    apply to the states.

4         So the case came down to the interpretation of the

5    parenthetical "including Chapter 35."  The tribes took the

6    position that, well, if the states are except, we are, too.

7    The Supreme Court just could not square that interpretation

8    that they were completely exempt with the language of the

9    statute, with the legislative history of the statute, with the

10   purpose of the statute, and the fact that Congress usually

11   speaks plainly when it's talking about tax exemptions.  So it

12   decided that the language including Chapter 35 was just a

13   mistake, as opposed to an ambiguity.

14        There is a canon of statutory interpretation that

15   says you give every word effect, and even that wasn't enough to

16   alter the outcome.  And the canon that calls for construing

17   statutes in favor of the tribes didn't carry the day either,

18   even though the textual interpretation that the Court adopted

19   was not in the tribe's benefit.  The Court found that the rigid

20   application of the canon in that instance would conflict with

21   the clear legislative intent embodied in the statute, as well

22   as other rules that say tax exemptions must be expressed and

23   not implied.

24        It went on to say, on page 95:  Moreover, the canon

25   that assumes congress intends its statute to benefit the tribes

1    is offset by the canon that warns us against interpreting

2    federal statutes as providing tax exemptions unless those

3    exemptions are clearly expressed.  Nor can one say that the

4    pro-Indian canon is inevitably stronger, particularly where the

5    interpretation of a congressional statute, rather than an

6    Indian treaty, is at issue.

7         Basically, this case that was cited in the motion for

8    reconsideration offers no guidance whatsoever for our

9    situation; it did not hold and it did not purport to address

10   whether the canon has applicability in a situation like this

11   one.  And it certainly didn't say the only situation where it

12   applies is when construing statutes given the reference to

13   treatise.

14        The government also cites *DeCoteau versus District*

15   *County Court for the Tenth Judicial District*, 420 U.S. 425,

16   from 1975, a habeas corpus action arising out of a child

17   custody dispute.  The issue was did the state welfare

18   department have jurisdiction to order the separation from the

19   children?  This turned on whether the treaty creating a

20   reservation had been terminated, reinstalling state civil and

21   criminal jurisdiction over the members of the tribe within its

22   borders.

23        The Supreme Court said it does not lightly conclude

24   that a reservation has been terminated.  The congressional

25   intent has to be clear to overcome the general rule that you

1    resolve doubtful expressions in favor of the people dependent

2    on the nation's protection and good faith; the intent to

3    terminate must be expressed on the face of the Act or in the

4    legislative history or the surrounding circumstances, all of

5    which, in that case, pointed to the conclusion that the

6    reservation had indeed been terminated.

7          The Court noted the existence of the rule that says

8    legal ambiguities are to be resolved to the benefit of the

9    Indians, at page 447, but it said, quote, it remains, at base,

10    a canon for construing the complex treaties, statutes, and

11    contracts which define the status of Indian tribes, close

12    quote.

13          That 1975 general statement that preceded the IGRA

14    doesn't rule out the canon's applicability here.  The Court

15    went on to say:  A canon of construction is not a license to

16    disregard clear expressions of tribal and congressional intent.

17          What is the congressional intent here?  The IGRA is

18    designed to level the playing field of newly-recognized tribes

19    when compared to the more well-established tribes.  And if

20    anything, that sentence supports a reading that the canon

21    covers a broader category of sources than just statutes.

22          It's true, as the government points out, that the

23    D.C. Circuit has stated that the canon, quote, applies only to

24    statutes that are both ambiguous and for the benefit of Indian

25    tribes.  And that was *Ho-Chunk, Inc., versus Sessions*, 894 F.3d

1    365, at page 369, in footnote 4, in 2018.  But that was in the

2    context of a case concerning whether Indian tribes were exempt

3    from federal recordkeeping requirements for cigarette sales.

4    And the Court observed in the footnote that the language of the

5    applicable statute was not ambiguous, and that neither the

6    provision in question nor the statute had been passed for the

7    benefit of Indians.

8          This is another example, to me, of the government

9    trying to give an isolated sentence more meaning than it was

10   intended to bear.  It is not at all clear that the question --

11   because the question wasn't even presented in *Ho-Chunk* or the

12   cases it cited for that proposition.  The obvious reading of

13   the sentence that the canon applies only to statutes that are

14   both ambiguous and for the benefit of Indian tribes was it was

15   telling the -- limiting the category of statutes to which the

16   canon applies.  It wasn't saying it applies only to statutes

17   period.

18         Also, under a heading called D.C. Circuit Law, the

19   government points me to, as it has repeatedly, a nonbinding

20   D.C. District court case, *Mashpee Wampanoag Tribe*, 466

21   F.Supp.3d 199.  The government said that the court in that

22   case, quote, expressly rejected the argument that the canon

23   could apply to a factual determination.  It says, at page 7 of

24   its motion for reconsideration:  In *Mashpee*, the tribe argued

25   that the canon should require the department to apply a

1   standard two-part test in a way that is favorable to the tribe.

2   Judge Friedman held that this argument misunderstands the

3   canon, and that the Indian canon of construction applies to

4   questions of statutory interpretation, but with the statutory

5   interpretation resolved, the canon's role is complete.

6           And the government also quotes the sentence from that

7   opinion that said:  After a statute has been interpreted,

8   agency action is always subject to arbitrary and capricious

9   reviewed under the APA.  But the government takes those

10  snippets out of context.

11          The case was a challenge by the tribe to a

12  determination by the secretary that it did not meet the

13  definition of "Indian" for purposes of the Indian

14  Reorganization Act.  And so the question was, is it under --

15  was that tribe under federal jurisdiction.  And the issue arose

16  in a challenge brought by the residents of the community in

17  which the tribe had been authorized to acquire and develop

18  land.

19          And, yes, at first blush it suggests that once the

20  statutory interpretation is out of the way, the canon no longer

21  bears on that determination.  But in that case, the statute had

22  been interpreted in an M opinion that explicitly took the canon

23  into account, and the test for "under federal jurisdiction"

24  established in the opinion had been blessed by the circuit

25  after it took the canon into account.

1    The government also points out that the *Grande Ronde*

2    decision undertook the APA analysis without further reference

3    to the canon, but the agency there ruled in favor of the tribe

4    and the court found that passed APA review, so the question was

5    never presented.  There was no need to step back and view it

6    from the tribe's perspective.

7    Furthermore, while I took the canon into account, in

8    the end, my decision was well within the agreed scope of APA

9    review; was the government's decision arbitrary and capricious

10   after considering all the relevant factors?

11   The canon came into play in connection with the

12   weight to be given to certain historical circumstances ignored

13   or overlooked or minimized by the agency.  But I also

14   considered plaintiff's argument that the purpose underlying the

15   exception had not been considered.  And that would be

16   consistent with Judge Friedman's reading of the law if his

17   *Mashpee* opinion were binding on me.

18   He said, at page 214, quoting the *Cablevision* opinion

19   at 649 F.3d 695, at page 714, quote, An agency decision is

20   arbitrary and capricious in a number of situations, including

21   if it entirely failed to consider an important aspect of the

22   problem.

23   That's also quite similar to what the government had

24   to say about the test in its memo in support of its motion for

25   summary judgment on page 37.

1    The government told me in its initial brief:  In

2    considering an agency's decision under the APA, a reviewing

3    court must determine whether the challenged decision was based

4    on consideration of the relevant factors, quoting the *State*

5    *Farm* case, 463 U.S., at page 42.  In this respect, the

6    government said, an agency action should be only deemed

7    arbitrary, quote, if the agency entirely failed to consider an

8    appropriate aspect of the problem, close quote.

9    Here, the problem faced by Interior was whether the

10   Vallejo parcel would qualify as a restoration of lands under

11   every the IGRA.  I agree with that sentence 100 percent.

12   It said then, though, to answer that question, Part

13   292 mandates that the agency consider whether the factual

14   evidence shows that the tribe has a modern, temporal, and

15   significant historical connection to the parcel.

16   This factual inquiry, said the department, is

17   distinct from the broad policy goals articulated in the IGRA.

18   The department makes that assertion, but I'm not sure I agree

19   with it.  How could an implementing regulation be distinct from

20   the policy goals underlying the statute it's implementing?  It

21   is this attitude the prompted the plaintiff's argument that the

22   agency was overlooking a key aspect of the problem.

23   The government went on, and it said:  It's true that

24   the IGRA generally embodies a policy of promoting trial

25   economic development and self-sufficiency, citing 25 U.S. Code

1    § 2702(1), and that the restored lands exception has a purpose

2    of promoting parity between established tribes and restored

3    tribes, again citing the Ninth Circuit -- you like the Ninth

4    Circuit, but we're not in the Ninth Circuit -- the *Rancheria*

5    opinion at 776 F.3d, at 711.  Then the agency said:  But those

6    general policy goals cannot help Interior answer the factual

7    and legal question of whether a tribe has a modern, temporal,

8    and significant historical connection to a particular parcel

9    such that it can serve as a restoration of lands.

10             I don't know; it probably can.  But they most

11   certainly can inform the question that the government has

12   admitted was actually before it, which is whether the parcel

13   would qualify under the IGRA.  And, therefore, given the canon,

14   in my view, the statement in the government's brief was

15   incorrect.  Hence, IGRA's generic policy goals were not an

16   important aspect of the problem in this case, and Interior's

17   failure to discuss those goals to the tribe's satisfaction

18   cannot be a violation of the APA.

19             I don't think we can just brush them away as generic

20   policy goals consistent with our binding circuit authority that

21   says those policy goals are critical to how the statute should

22   be interpreted.

23             Since the canon requires that particular attention be

24   paid if the government is adversely affecting a tribe that is

25   supposed to be the beneficiary of the statute at issue, I was

1    required to take a closer look.  And given the agency's failure

2    to consider those aspects of the problem, remand was

3    appropriate under the APA.

4            It is somewhat odd that the department chides the

5    Court as if it was striding unbidden into these waters,

6    reaching out to resolve a dispute that had not been presented

7    and applying principles that had not been mentioned.

8            The Court was asked to decide whether the agency's

9    application of its regulation was arbitrary and capricious, and

10   the plaintiff pointed out aspects of the situation -- in

11   particular, the facts underlying how the Band came to be

12   landless in the first place -- that the agency had failed to

13   consider.

14           In that process, then, I read the cases that both

15   sides presented in their entirety, and not just the little

16   snippets and sentences that people gave me, and I followed the

17   principles that they articulated.

18           Yes, the ILO paid lip service to prior historical

19   connections, but it decided they weren't significant enough,

20   but "significant" isn't a word in the statute.

21           If anything, *Montana versus Blackfeet Tribe* supports

22   this Court's reasoning.  It emphasized that the Indian canon is

23   rooted in the unique trust relationship between the U.S. and

24   the Indians and that relationship was the aspect of the problem

25   the agency overlooked.

1     I think the closest situation was the *Kempthorne*

2   case, *Citizens Exposing Truth About Casinos*.

3     In the *CETAC* case, when a non-profit organization

4   opposed to gambling was challenging Interior's decision --

5   embodied in what? an ILO, an opinion letter -- to take land

6   into trust, the Court of Appeals found it to be a sufficiently

7   formal interpretation of the IGRA to be subject to both *Chevron*

8   deference and also the Indian canon.  That was at 492 F.3d, at

9   464 to -65, and then again at 471.

10     It suggests if, as here, the government's insisting

11   that its decision is a formal agency determination that is owed

12   deference by this court, you can't very well say, well, it's

13   not subject to the canon, too.

14     Finally, I note that the government argued in its

15   reply that even if the canon applies when interpreting a reg.

16   and not a statute -- and I've already rejected the notion that

17   there's some clear distinction between those two in this

18   particular case -- that I didn't make the necessary predicate

19   finding that the reg. was ambiguous, or consider material that

20   would bear on that material, and so, there was no role for the

21   canon to play.

22     It is true that in its regulation the agency defined

23   "significant historical connection," and I found that that

24   definition survived the plaintiff's challenge.  The problem is

25   that even though the vague term is defined, it still remains in

1    the eye of the beholder, and it is not a black and white,

2    objective test, but as demonstrated by this case, it is

3    susceptible to multiple interpretations and applications.

4          As the government put it on page 20 in its memorandum

5    in support of a motion for summary judgment when telling me

6    what ambiguity is in terms of a statute, it said the question

7    for this Court is not whether the statutory language has a

8    meaning that may or even had been applied, but whether the

9    statutory language has only one meaning that can be applied.

10   And it added that unambiguous would mean no room for agency

11   discretion.

12         Here even the reg. which defined what historical

13   connection was and what significant historical connection was

14   certainly left room for agency discretion.  And given the fact

15   that even the agency has acknowledged over and over again that

16   what it was doing was applying the IGRA, I continued to believe

17   that it was appropriate for me to review the ILO with the canon

18   in mind.

19         So in conclusion, at best, as the plaintiffs put it,

20   the government is correct when it says there's no clear

21   authority requiring that the canon must be considered when

22   applying a vague regulation promulgated to implement a plainly

23   ambiguous statute.  But it pointed to no law that prohibits it,

24   and the cases that mention it are more consistent with my

25   reading than Interior's.  Moreover, scholars who have been

1    looking at this issue much longer than I have stated explicitly

2    that it should.

3           Therefore, upon further review, in consideration of

4    the authorities the parties have now provided to address this

5    issue directly, and given all of the binding authority in this

6    circuit regarding the purpose of the restored lands provision

7    and the need to construe it broadly with the canon in mind, and

8    the fact that the government repeatedly hung its hat on a Ninth

9    Circuit decision that's not binding on this court, the Court

10   does not find that it was clear error for it to review the

11   agency's decision from the perspective of the Indian canon and

12   to resolve all inferences in the Band's favor.

13          Also, I think my decision fell squarely within the

14   directive contained in *State Farm*, that an agency action may be

15   deemed arbitrary if the agency entirely failed to consider an

16   important aspect of the problem.

17          Thus, given the absence of clear error in the opinion

18   that would call for a different outcome, the motion for

19   reconsideration is denied.

20          Hopefully, you're not going to ask me to rule on this

21   again, you'll take your chances with somebody else next time.

22   But the motion for reconsideration is denied.  And I think that

23   is the only thing I have in front of me to deal with right now.

24          Is there anything that I need to hear right now from

25   the plaintiffs?

```
 1              MS. LOCKLEAR:  No, Your Honor.

 2              THE COURT:  Anything further from the government?

 3              MS. McCUNE:  Just a question, Your Honor.

 4              THE COURTROOM DEPUTY:  Can you come to the

 5    microphone?

 6              MS. McCUNE:  When you issued the order initially, you

 7    just remand it and did not enter final judgment.  Is that what

 8    will happen again this time?

 9              THE COURT:  I think -- I really have to look back at

10    the order and what I did.

11              MS. McCUNE:  Okay.

12              THE COURT:  I mean, at this point I don't -- it would

13    be a new case, it seems to me, if the agency looks at the issue

14    again and issues a new opinion.

15              MS. McCUNE:  I think that's right.  I'm just

16    wondering, for purposes of appeal.  But we'll just assume

17    that's -- whatever the order is.

18              THE COURT:  No, I think that at this point we're at

19    the this is a final, appealable order stage.

20              MS. McCUNE:  Thank you, Your Honor.

21              THE COURT:  Perfectly happy to have the Court of

22    Appeals tell me what that think we should be doing with all of

23    these inconsistent rulings about the Indian canon of

24    construction.

25              All right.  Thank you, everybody.
                          *   *   *
```

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 23rd day of May, 2023

_____

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C.  20001